IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GARY L. KORTH,                              :
              Plaintiff            :
                                       :
   vs.                                      :    CIVIL NO. 1:CV-15-2422
                                       :
JILL HOOVER, individually and in her         :       (Judge Caldwell)
official capacity; JOSEPH R. BAKER,          :
individually and in his  official capacity;  :
and OLIVER TOWNSHIP,                         :
             Defendants           :
                                       :
                                       :
                                       :

*M E M O R A N D U M*

I.  *Introduction*

      Plaintiff, Gary L. Korth, filed this civil-rights action under 28 U.S.C. § 1983 against defendants, Oliver Township and two of its supervisors, Jill Hoover and Joseph Baker.  The suit arises from an alleged assault on Plaintiff committed by a Township police officer, Mark Botts, now deceased, when Plaintiff was visiting the Township Municipal Building and making a complaint to Hoover about Botts.  In addition to federal civil-rights claims under 42 U.S.C. § 1983, Plaintiff makes several state-law claims.

      We are considering Defendants' motion to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state claim upon which relief can be granted.

II.   *Standard of Review*

A complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). Nonetheless, a complaint has to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570, 127 S.Ct. 1955 at 1974.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "[L]abels and conclusions" are not enough, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.*, 127 S.Ct. at 1965 (quoted case omitted).

The Third Circuit has described the Rule 12(b)(6) inquiry as a three-part process:

> First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013)(quoted cases omitted).  *See also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

With this standard in mind, we set forth the background to this litigation, as Plaintiff alleges it.

III.    *Background*

In pertinent part, Plaintiff alleges as follows.  Defendants Hoover and Baker are Oliver Township supervisors and policymakers, with authority over the Township's police department.  (Doc. 7, Am. Compl. ¶¶ 4, 5, and 72).  Plaintiff is a former United States Marine and former police officer.  (*Id.* ¶ 8).  He is "a well-known and active member of the community" and "has regularly participated in Oliver Township's local political process, including acting as a community advocate regarding financial and other oversight and administration of the Oliver Township Police Department."  (*Id.*).  Botts was a sergeant in the police department.  (*Id.*).

On July 18, 2013, Plaintiff visited the Township municipal building to speak with defendant Hoover about "his ongoing complaints against" Botts "for alleged police misconduct, and to complain and present evidence about alleged misconduct by the Township Supervisors including Hoover."  (*Id.* ¶ 13).  At that time, Hoover "appeared to be seated alone doing paperwork of some sort."  (*Id.* ¶ 15).  However, Botts had concealed himself behind a partition where he could secretly listen to Plaintiff's complaints.  Hoover knew this but did not tell Plaintiff as he made his complaints against Botts.  (*Id.* ¶¶ 15-17).

Plaintiff "both provided and requested information about allegations regarding Officer Botts' alleged misconduct . . ."  (*Id.* ¶ 18).  In part, Plaintiff complained that the

supervisors "were intentionally and recklessly continuing with a pattern of enabling Officer

Botts to engage in alleged serious misconduct which placed the Township and residents

at risk." (*Id.*).  Plaintiff "recited numerous specific allegations of misconduct by Officer

Botts which, in his opinion (as an ex-police officer in Pennsylvania), demanded

immediate suspension and/or removal of Officer Botts from the Township's employment."

(*Id.* ¶ 21).  More specifically, Plaintiff complained:

> a. that Officer Botts was sexually harassing Mr. Korth's daughter-in-law while he was on duty as a police officer for the Township;
>
> b. that the Patriot News had previously published that Officer Botts was forced to resign from one nearby police department after two women publicly complained about sexual encounters with Officer Botts, and that Officer Botts allegedly publicly admitted that he gave one of the women a catalog of "adult products" while on duty as a policeman, and likewise acknowledged that he gave out lollipops that were shaped like male genitalia from his patrol car;
>
> c. that Officer Botts was currently moonlighting, so to speak, at a local strip club and openly engaging in lewd conduct unbecoming a sworn police officer, and openly posting pictures and comments of his said conduct on social media for the public to see, alongside with (sic) pictures of the Township's police car;
>
> d. that there were rumors that Officer Botts was being treated favorably by the Township and certain supervisors because Botts had allegedly arranged for his boss at the alleged strip club to purchase and fund "donations" to the Township through a so-called "anonymous" source; that the structuring of the funding as an "anonymous" donation was done in concert by Botts, the Supervisors and the Township in order to

prevent public disclosure of the alleged unseemly source of the funds/equipment;

e. that the Defendant Township and Defendant Supervisors had repeatedly refused to disclose, discuss, or acknowledge the true source of the alleged improper funding and/or equipment that was allegedly "donated" to the Township by the "anonymous" source, rumored to be Officer Botts, by and through the said strip club;

f. that Officer Botts, was allegedly not fit to be a police officer in the Township given the above-described circumstances, in the opinion of Mr. Korth, and numerous other Township residents who presented a petition to the Township to dissolve the police department in order to be rid of Botts;

g. that a reasonable and customary background investigation of Officer Botts by the Co-Defendants should have obviously been done prior to his hiring but was not done, and that it should be done presently but for the supervisors' refusal to do it, and that it would readily have revealed, and would still reveal, a "troubled" past in other local police departments and moves from one department to another amidst allegations of sexual and other misconduct, all of which would allegedly demonstrate that Botts was similarly not fit to be a police officer in the Township; and

h. that when confronted with public scrutiny of these events, the Township Supervisor(s) and Township falsely claimed at a public meeting that they had performed a background check prior to hiring Officer Botts when, in fact, none had been performed.

(*Id.* ¶ 22).  Hoover responded that this was "none" of Plaintiff's "concern" as he was not

the Township's "fourth Supervisor . . . ."  (*Id.* ¶ 20).

While Plaintiff was presenting his complaints to Hoover, Botts "launched" himself from behind the partition and began "screaming and yelling" at Plaintiff that he should "stop making his complaints and get out of the Township building." (*Id.* ¶¶ 23 and 24).  Plaintiff declined to leave the building "and demanded that Officer Botts leave him alone while he finished" his complaints.  (*Id.* ¶ 24).

Botts "then screamed that he was going to arrest Mr. Korth for 'trespassing' and simultaneously began pushing Mr. Korth toward the door . . . ." (*Id.* ¶ 26).  Plaintiff requested that Hoover "order" Botts "to leave him alone." (*Id.* ¶ 27).  But Hoover "did nothing at all to stop Officer Botts from continuing the assault" and instead "placed herself next to Officer Botts and supported the Officer by . . . telling Mr. Korth that he should stop making complaints since he was not a supervisor and that he should just leave." (*Id.*).

Botts took Hoover's reaction as an "endorsement" of his conduct and as an "implicit instruction" to continue his "attack" on Plaintiff and "eventually began violently striking and pushing Mr. Korth about the upper body." (*Id.* ¶ 28).  Botts "repeatedly struck and pushed Mr. Korth so forcefully that Mr. Korth's full body was knocked backward repeatedly and painfully." (*Id.* ¶ 30).  Plaintiff demanded that Hoover "do something to intervene and control" Botts.  (*Id.* ¶ 31).  Hoover "still did nothing; instead, she left the immediate area without making any comment to the officer to desist or to leave, etc." (*Id.* ¶ 32).  After Hoover left, Botts struck Plaintiff so forcefully that he fell through a doorway into a hallway.  (*Id.* ¶ 33).  As a result of the assault, Plaintiff suffered a heart attack and spent three days in the hospital.  (*Id.* ¶¶ 34 and 36).

Botts "in the months and years" before his assault on Plaintiff "had a history of outrageous and egregious unprofessional misconduct" as a police officer. (*Id.* ¶ 40). Before the assault, there were also "numerous citizen complaints" about "Botts' outrageous and egregiously unprofessional manner" as a police officer. (*Id.* ¶ 45). The defendant Township and supervisors knew of Botts' history and of the citizen complaints but "were deliberately indifferent" to the history and ignored the complaints. (*Id.* ¶¶ 41 and 46).

The Township and supervisors "condoned, if not encouraged, the unlawful behavior of Botts leading up to and including the attack upon Mr. Korth." (*Id.* ¶ 43). They also provided "either no, or inadequate, training to Botts pertaining to the outrageous and egregiously unprofessional misconduct, including sexual harassment and similar complaints against police officers, including the handling of citizens like Mr. Korth who made such complaints." (*Id.* ¶ 47). They also failed to discipline him "despite actual knowledge that Botts harassed others and acted outrageously and egregiously regarding same in the performance of his duties." (*Id.* ¶ 49). Defendants' acts and omissions described above indicate a "deliberate indifference" to a citizen's federal constitutional rights and rights under state law. (*Id.* ¶ 50).

Defendants also "fail[ed] to adopt and enforce reasonable and necessary policies and procedures to end the abuse and deliberate indifference to the rights and safety of citizens, including Mr. Korth, perpetrated by Defendants' failure to appropriately hire, train, supervise, discipline, and investigate Botts." (*Id.* ¶ 54). Defendants also

engaged in a "joint venture," and the "individual defendants assisted each other in performing the various actions described, and lent their physical presence, support and the authority of their office to each other during said events."  (*Id.* ¶ 55).

"Hoover and Baker deliberately implemented several policies and practices that created an unreasonable risk of constitutional violations on the part of the Township and Police Department, and especially by Botts, and their failure to change those policies or employ reasonable corrective action or discipline is a direct and proximate cause of the Constitutional rights violations suffered by Mr. Korth."  (*Id.* ¶ 75).  "More specifically, among these practices was for Hoover and Baker to deliberately ignore the pattern and history (sic) Constitutional deprivations by Botts and of well known abuses and bizarre misconduct allegedly perpetrated by Botts, to deliberately ignore citizen complaints regarding Botts, to deliberately refuse to discipline, counsel or train/re-train Botts, or to conduct a reasonable background investigation of him when it was clearly customary and necessary to do so."  (*Id.* ¶ 76).

"The lacking and/or unenforced practices, policies and procedures which Defendants were required, at a minimum, to promulgate, implement, monitor, enforce and, if necessary modify, include":

> ● a heightened supervisory sensitivity and reasonable vigilance for uncovering and eradicating Constitutional rights violations
>
> ● procedures whereby citizens who had suffered Constitutional violations are encouraged to access a simple, non-retaliatory and responsive procedure to

register their complaints and receive prompt objective
responses

● procedures cataloging complaints and their
outcomes

● creation of and real enforcement of appropriate
disciplinary procedures when complaints of
Constitutional rights violations were founded

● and adequate training and re-training of officers,
including Botts, when needed.

(*Id.* ¶ 80)(bullet-pointing added).  "The existing policies, customs, procedures and culture
. . . created an unreasonable risk of injury and Constitutional rights violations of the exact
type" Plaintiff suffered.  (*Id.* ¶ 81).

Allegations against the defendant Township echo those against the defendant
supervisors.  The Township: (1) inadequately and improperly investigated "citizen
complaints of police misconduct, particularly as it related to Botts" (*id.* ¶ 85); (2) tolerated
"acts of misconduct" (*id.*); (3) inadequately screened applicants during the hiring process
(*id.* ¶ 86); (4) inadequately performed background investigations (*id.*), (5) inadequately
trained and supervised police officers, including Botts (*id.*); and (6) failed to adopt polices
that would have prevented the constitutional violations.  (*Id.* ¶ 88).

Plaintiff presents seven causes of action.  In Count 1, he asserts a Fourth
Amendment excessive-force claim against Hoover and Baker, repeatedly alleging that
Botts and Hoover used excessive force against him.  In Count 2, he asserts federal civil-
rights supervisory liability against Hoover and Baker for the injuries Botts inflicted by way
of the deficient policies and practices they implemented.  In Count 3, he asserts federal

civil-rights municipal liability against the Township for the injuries Botts inflicted based on

deficient policies, practices and customs.  In Count 4, he asserts a federal substantive

due process claim against all three defendants for Botts' conduct.  In Count 5, he asserts

a claim for the injuries inflicted against all three defendants under the Pennsylvania

Constitution, Art. I, § 8, the state counterpart to the Fourth Amendment.  In Count 6, he

asserts a state-law claim against all the defendants for assault and battery.  In a second

Count 6 (no doubt intended as Count 7), he asserts a state-law claim against all

defendants for negligence.

As relief, Plaintiff seeks compensatory and punitive damages.  He also seeks

an injunction prohibiting Defendants from engaging in the same federal civil-rights

violation in the future and requiring the Township to adopt and enforce policies for the

police department that would prevent the same federal civil-rights violation.  (*Id.* ¶

114(d)).

IV.  *Discussion*

> A.  *Suit Against the Individual Defendants in Their Official*
> *Capacities Will Be Dismissed As Redundant to the Suit*
> *Against the Township*

Defendants move to dismiss the suit against the individual defendants in their

official capacities as redundant to the suit against the Township because suit against

individuals in their official capacities is considered as one against the municipality.  *See*

*Bittner v. Snyder County*, 345 F. App'x 790, 792 (3d Cir. 2009)(nonprecedential).

We agree and will dismiss the suit as against the individual defendants in their official capacities. *See Cuvo v. DeBiasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (nonprecedential)("Because Cuvo is suing Palmer Township, the suit against the officers in their official capacities is redundant."); *Chinoy v. Pennsylvania State Univ.*, No. 11-CV-1263, 2012 WL 727965, at *2-3 (M.D. Pa. Mar. 6, 2012)(Caldwell, J.); *Crane v. Cumberland Cnty.*, 2000 WL 34567277, at *3 (M.D. Pa. Jun. 16, 2000)(Caldwell, J.)("when a plaintiff names the municipality as a defendant, it is redundant, and possibly confusing to the jury, to also include the employee in his or her official capacity, because the two are really one defendant").

Plaintiff argues that we must allow suit against the individual defendants in their official capacities because the Township is not liable for their intentional state torts (presumably because of governmental immunity under state law) so that dismissing suit against them in their official capacities would also dismiss them from the state-law claims based on intentional official misconduct. This argument lacks merit. Dismissing suit against the individual defendants in their official capacities would have no effect on the individual defendants' liability on the state-law causes of action. They would still remain liable on those causes of action in their individual or personal capacities. As noted, suing an individual in her official capacity is simply another way of naming as a party in the suit the governmental entity she represents; it has no bearing on the merits of any cause of action against her.

B.  *Count 1 May Proceed As Against Hoover But Not Baker*
    *As the Count Alleges the Requisite Personal Involvement*
    *of Hoover*

In Count I, Plaintiff asserts a Fourth Amendment excessive-force claim against

Hoover and Baker, repeatedly alleging that Botts and Hoover used excessive force

against him.  (Doc. 7, Am. Compl. ¶¶ 63, 66, and 67).

Defendants move to dismiss this claim, arguing that it fails to allege the

personal involvement of Hoover and Baker in Botts' assault required in a civil-rights

action.  Plaintiff responds that his allegations concerning Hoover and Baker's failure to

follow correct policies or customs related to training, discipline and control are sufficient

to establish their personal involvement in the claim.  In making this argument, Plaintiff

eschews reliance on his allegations that Hoover was present during the assault and

participated in it to some degree.  Defendants reply that the policy or custom argument is

relevant to Count 2, the claim against Hoover and Baker for supervisory liability, but not

as to a "direct claim," as they put it, of excessive force.

We agree with Defendants that Plaintiff's argument on supervisory liability

should be dealt with in connection with Count 2, as Plaintiff does seem to be making in

Count I a claim based on direct involvement in the use of excessive force, in light of the

repeated allegations that both Botts and Hoover used excessive force against Plaintiff.  In

any event, our refusal to consider Plaintiff's argument here does not prejudice Plaintiff as

it will be considered in connection with Defendants' motion to dismiss Count 2.

With this understanding of Count 1, we address Defendants' argument as follows.  In order for an individual defendant to be found liable in a civil-rights action, the individual "'must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'"  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(quoted case omitted).  One general way for a supervisor to be personally liable under section 1983 is broken down by the Third Circuit as follows: he or she can (1) participate in violating the plaintiff's rights; (2) direct others to violate them; or (3) as the person in charge, know of and acquiesce in the subordinate's unconstitutional conduct.  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, ____ U.S. ___, 135 S.Ct. 2042, 192 L.Ed.2d 78 (2015).

We do not understand why Plaintiff refuses to rely on Hoover's conduct during the assault by Botts.  Plaintiff's allegations concerning Hoover sufficiently allege that Hoover, as the person in charge, knew of and acquiesced in Botts' use of excessive force.  Hoover is alleged to have been present at the scene and to have failed to stop Botts after Botts began shoving and then striking Plaintiff and knocking him backward, even after Plaintiff requested her assistance.  Plaintiff has sufficiently alleged Hoover's personal involvement in the use of excessive force, and Defendants' motion to dismiss Count 1 will be denied as to defendant Hoover.

In contrast, Plaintiff fails to allege any role defendant Baker may have played in the assault.  Because there is nothing to suggest defendant Baker had any direct

personal involvement (as opposed to maintaining an unconstitutional policy or custom which will be dealt with below), Defendants' motion to dismiss Count 1 as against defendant Baker will be granted.

C.  *Plaintiff's Claim of Supervisor Liability Fails to State Sufficient Facts*

In Count 2, Plaintiff asserts federal civil-rights supervisory liability against Hoover and Baker for the injuries Botts inflicted.  As more fully set forth above, Plaintiff bases their liability on allegations that these defendants implemented deficient policies and customs that resulted in Botts' assault on Plaintiff.  These policies and customs at times involved a failure to properly hire, train, discipline, supervise, and investigate.

Defendants argue that Plaintiff has failed to state a claim because he must specifically allege a policy or custom and that the policy or custom caused the constitutional violation.  Instead, Plaintiff merely relies on a general recitation of the terms and phrases associated with supervisory liability arising from policy or custom without saying what the policy or custom was and how the policy or custom caused Plaintiff's injuries.  In opposition, Plaintiff argues that he has clearly specified the policies and customs that caused the harm.  He points to the allegations of paragraphs 40 through 55 of the Amended Complaint in support.

Government officials cannot be held liable for civil-rights violations under a theory of respondeat superior.  *Barkes*, *supra*, 766 F.3d at 316.  They are only liable for their own unconstitutional conduct.  *Id.*  Such conduct can arise if supervisors, acting

"with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (internal quotation marks and quoted case omitted).

Policy is established when it is shown that "a decision maker possessing final authority to establish municipal policy with respect to the action" has "issue[d] an official proclamation, policy, or edict." *Watson v. Abington Township,* 478 F.3d 144, 155 (3d Cir. 2007). *Id.* (quoted case, internal quotation marks, and internal brackets omitted). A custom (or practice) is established when, in the absence of a formal policy, it can be shown "that a given course of conduct . . . is so well settled and permanent as virtually to constitute law." *Id.* at 156 (internal quotation marks and quoted case omitted). Custom can arise when policymakers are "aware of similar unlawful conduct in the past, but failed to take precautions against future violations . . . ." *Beck v. City of Pittsburgh,* 89 F.3d 966, 972 (3d Cir. 1996)(quoted case omitted). "'Failure to'" claims — failure to train, failure to discipline, or . . . failure to supervise — are generally considered a subcategory of policy or practice liability." *Barkes*, *supra*, 766 F.3d at 316.

We disagree with Plaintiff that he has clearly specified the policies and customs that caused him harm. As noted above, Plaintiff must plead sufficient facts to make his claim plausible, and we cannot accept allegations that are mere conclusions. As set forth above, Plaintiff's allegations bearing on policy and custom are totally conclusional. For example, Plaintiff alleges the following. Before the assault, Botts "had a history of outrageous and egregious unprofessional misconduct," (Doc. 7, Am. Compl. ¶ 40), and

that there were "numerous citizen complaints" about "Botts' outrageous and egregiously unprofessional manner." (*Id.* ¶ 45). And although the defendant Township and supervisors knew of Botts' history and of the citizen complaints, they "were deliberately indifferent" to the history and ignored the complaints. (*Id.* ¶¶ 41 and 46).

It goes on in this same vein. The Township and supervisors "condoned, if not encouraged, the unlawful behavior of Botts leading up to and including the attack upon Mr. Korth." (*Id.* ¶ 43). They also provided "either no, or inadequate, training to Botts pertaining to the outrageous and egregiously unprofessional misconduct, including sexual harassment and similar complaints against police officers, including the handling of citizens like Mr. Korth who made such complaints." (*Id.* ¶ 47). They also failed to discipline him "despite actual knowledge that Botts harassed others and acted outrageously and egregiously regarding same in the performance of his duties." (*Id.* ¶ 49). Defendants' acts and omissions described above indicate a "deliberate indifference" to a citizen's federal constitutional rights and rights under state law. (*Id.* ¶ 50). Defendants also "fail[ed] to adopt and enforce reasonable and necessary policies and procedures to end the abuse and deliberate indifference to the rights and safety of citizens, including Mr. Korth, perpetrated by Defendants' failure to appropriately hire, train, supervise, discipline, and investigate Botts." (*Id.* ¶ 54). Defendants engaged in a "joint venture," and the "individual defendants assisted each other in performing the various actions described, and lent their physical presence, support and the authority of their office to each other during said events." (*Id.* ¶ 55).

Without intending to limit our criticism of the Amended Complaint to the following areas, Plaintiff had to specify what Botts' previous "outrageous and egregious unprofessional misconduct" was and describe what the "numerous citizen complaints" were.  This previous conduct must also be similar to Botts' conduct that caused Plaintiff's injury.  Plaintiff also had to specify the unconstitutional policy or custom.  *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)("To satisfy the pleading standard, McTernan must identify a custom or policy, and specify what exactly that custom or policy was.").  On the "failure to" claims, Plaintiff also had to allege specific training that should have been provided, *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997), and the specific supervisory practice that was not employed.  *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001).

We will dismiss Count 2 but permit Plaintiff an opportunity to amend to allege sufficient facts to show Hoover's and Baker's supervisory liability, including necessary allegations on causation.

    D.  *Plaintiff's Claim of Municipal Liability Fails to State Sufficient Facts*

In Count 3, Plaintiff asserts a federal civil-rights municipal-liability claim against the Township for the injuries Botts inflicted based on the Township's deficient policies, practices and customs.  Defendants argue against this claim in the same way they argued against Count 2, that the allegations are conclusory and that the allegations of policy or custom lack specificity.  Further, the allegations do not show how the Township was the moving force behind Plaintiff's injury.

A municipality cannot be liable under section 1983 by way of respondeat superior. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010). Instead, the plaintiff must show that the municipality had a custom or policy that caused the injury. *Id.*

Plaintiff asserts that he has adequately pled the Township's liability, but we disagree. As noted above, the allegations concerning policy and custom were conclusional and those focused solely on the defendant Township suffered from the same defect. The Township: (1) inadequately and improperly investigated "citizen complaints of police misconduct, particularly as it related to Botts" (Doc. 7, Am. Compl. ¶ 85); (2) tolerated "acts of misconduct" (*id.*); (3) inadequately screened applicants during the hiring process (*id.* ¶ 86); (4) inadequately performed background investigations (*id.*); (5) inadequately trained and supervised police officers, including Botts (*id.*); and (6) failed to adopt polices that would have prevented the constitutional violations. (*Id.* ¶ 88).

For the reasons given above in connection with supervisory liability, we will dismiss Count 3. However, we will grant Plaintiff leave to amend this claim.

E.  *The Substantive Due Process Claim Fails Because Defendants' Conduct Is Covered Under a More Specific Constitutional Provision*

In Count 4, Plaintiff asserts a federal substantive due process claim against all three defendants, alleging that their conduct violated the Fourth and Fourteenth Amendments. (Doc. 7, Am. Compl. ¶ 94). Defendants argue that Plaintiff can make no substantive due process claim when the claim is covered by a specific constitutional provision, here the Fourth Amendment. We agree. *See Berg v. County of Allegheny*,

219 F.3d 261, 268-69 (3d Cir. 2000)(analyzing claim of improper arrest under the Fourth Amendment rather than under the Due Process Clause of the Fourteenth Amendment because the Fourth Amendment was the specific constitutional amendment governing the claim); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010)("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process")(quoted case and internal quotation marks omitted).

Count 4 will therefore be dismissed.

F.  *The Pennsylvania Constitution Does Not Provide a*
    *Private Cause of Action for Damages*

In Count 5, Plaintiff asserts a claim for the injuries inflicted by Botts against all three defendants under the Pennsylvania Constitution, Art. I, § 8, the state counterpart to the Fourth Amendment.  In this count, Plaintiff seeks compensatory and punitive damages "and such other relief the court deems appropriate, including injunctive relief." (Doc. 7, Am. Compl.  ECF p. 27).

Defendants argue that Count 5 should be dismissed because there is no private cause of action for monetary damages for excessive force cases under Article I, Section 8 of the Pennsylvania Constitution.  They cite in support *Jones v. City of Philadelphia*, 890 A.2d 1188, 1216 (Pa. Commw. Ct. 2006)(en banc).

Plaintiff concedes he cannot recover damages on this claim. *See Pocono Mountain Charter School v. Pocono Mountain School Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011)(nonprecedential)(there is no private cause of action for damages under the Pennsylvania Constitution)(citing *Jones*). However, he argues Count 5 can proceed on the claim for injunctive relief.

Plaintiff correctly asserts he can pursue a claim for injunctive relief under the Pennsylvania Constitution. *Jones*, 890 A.2d at 1216 ("Other remedies, such as declaratory or prospective injunctive relief . . . are . . . remedies under the Pennsylvania Constitution); *Pocono Mountain Charter School*, 442 F. App'x at 688 (recognizing a claim for injunctive relief under the Pennsylvania Constitution).

We will therefore grant Defendants' motion to dismiss the claim for damages in Count 5 but deny it as to the claim for injunctive relief.

### G. *The State-Law Claim for Assault and Battery Can Proceed Against Hoover but Not Against the Township or Baker*

In Count 6, Plaintiff asserts a state-law claim against all the defendants for assault and battery.[1] In moving to dismiss this claim, Defendants make the following arguments. First, none of them can be liable for assault and battery because Plaintiff

---

[1] The caption for Count 6 is "42 U.S.C. §1983 Assault and Battery," leading Defendants naturally to understand that Plaintiff was bringing a claim for assault and battery under § 1983. Defendants therefore moved to dismiss Count 6 on the ground that there is no action for assault and battery under § 1983. Since Plaintiff denies he is attempting to assert a federal civil-rights claim in this Count, stating that it is just a state-law claim, we will treat the Count as a state-law claim and will not address whether such a claim can be brought under federal law.

does not allege the supervisory defendants Hoover and Baker had any physical contact with Plaintiff, only that Botts did.  Second, the Township has governmental immunity from this state-law claim under the Pennsylvania Political Subdivision Tort Claims Act ("the Tort Claims Act").  42 Pa. Cons. Stat. Ann. §§ 8541 *et seq.*  In opposition, Plaintiff argues he can make this claim against the defendants under a theory of respondeat superior. He also relies on the allegations that Hoover was present during the assault and argues that she "condoned" it.  (Doc. 14, Opp'n Br. at ECF p. 27).  In reply, Defendants argue that none of the defendants can be held liable for the actions of Botts by way of respondeat superior.  Further, in addition to the governmental immunity the Township enjoys, the individual defendants have official immunity under the Tort Claims Act as well.

We deal first with whether Plaintiff can make a claim against the defendant Township.  We agree with Defendants that the Tort Claims Act immunizes the Township from liability on the claim for assault and battery.  The act grants broad immunity to local governments against tort suits.  *See* 42 Pa. Cons. Stat. Ann. § 8541.  Eight exceptions to section 8541's general grant of immunity exist, all based on negligence involving: (1) the operation of motor vehicles; (2) the care, custody and control of personal property; (3) the care, custody, and control of real property; (4) a dangerous condition of trees, traffic controls and street lighting; (5) a dangerous condition of utility service facilities; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; and (8) the care, custody and control of animals.  *See* 42 Pa. Cons. Stat. Ann. §§ 8542(a) and (b)(1)-(8). Assault and battery is an intentional tort.  *Pascocciello v. Interboro School District*, No.

05-CV-5039, 2006 WL 1284964, at *8 n.9 (E.D. Pa. May 8, 2006).[2]  Thus none of these

exceptions for negligence actions would apply, and the Township is immune from this

claim.  *See Martin v. City of Reading*, 118 F. Supp. 3d 751, 780-81 (E.D. Pa.

2015)(defendant city was immune from suit for defamation and false light invasion of

privacy as the torts did not come within any of the eight exceptions to immunity);

*Pascocciello*, 2006 WL 1284964, at *8 (school district was immune from claim for assault

and battery since the Tort Claims Act conferred immunity from intentional torts by its

employees); *Lakits v. York*, 258 F. Supp. 2d 401, 407 (E.D. Pa. 2003)(the Tort Claims Act

does not waive immunity for intentional torts, so the defendant borough was entitled to

immunity from claims of assault and battery).  Immunity precludes a claim against a

municipality based on respondeat superior liability.  *Reiff v. Marks*, No. 08-CV-5963, 2009

WL 2058589, at *4 (E.D. Pa. July 25, 2009).

We turn now to the liability of Hoover and Baker.  Individual defendants have

official immunity to the same extent as their employing municipality has governmental

immunity, 42 Pa. Cons. Stat. Ann. § 8545, except that an employee has no immunity for

an act that "constitute[s] a crime, actual fraud, actual malice or willful misconduct . . . ."

*Id.* § 8550.  Willful misconduct" is synonymous with "intentional tort."  *Roskos v. Sugarloaf

Township,* 295 F. Supp. 2d 480, 492 (M.D. Pa. 2003); *Brown v. Muhlenberg Township,*

269 F.3d 205, 214 (3d Cir. 2001). Pennsylvania law interprets "willful misconduct" as

---

[2]  They are actually two separate torts, *Lakits v. York*, 258 F. Supp. 2d 401, 407 (E.D.
Pa. 2003), but are commonly pled together.

"conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." *Roskos,* 295 F. Supp. 2d at 492 (*citing King v. Breach,* 115 Pa. Commw. Ct. 355, 366-367, 540 A.2d 976, 981 (1988)).[3]

Based on the requirement of willful misconduct, neither Hoover nor Baker can be held liable for Botts' conduct under a respondeat superior theory; there must be some direct engagement in tortious conduct. *Martin*, *supra*, 118 F. Supp. 3d at 781 n.28 ("liability by virtue of the doctrine of respondeat superior does not constitute 'willful misconduct' capable of stripping [a police chief's] immunity'); *Reiff*, *supra*, 2009 WL 2058589, at *4 (police chief cannot be sued under respondeat superior when he is immune under the Tort Claims Act).  Since Plaintiff does not allege that Baker engaged in any conduct, this claim fails as against Baker.  That leaves only Hoover.

Unlike Baker, Plaintiff alleges that Hoover did engage in conduct he alleges makes her liable for assault and battery.  Plaintiff alleges Hoover was present when Botts screamed that he was going to arrest Plaintiff for trespassing and simultaneously began pushing Plaintiff toward the door.  (Doc. 7, Am. Compl. ¶ 26).  Plaintiff requested that Hoover "order" Botts "to leave him alone."  (*Id.* ¶ 27).  But Hoover "did nothing at all to stop Officer Botts from continuing the assault" and instead "placed herself next to Officer

---

[3]  In the context of a police officer making a lawful arrest, for an assault and battery to constitute willful misconduct for the purpose of the Tort Claims Act the plaintiff must show that the officer intended to use excessive force, not simply that he intended to use force.  *Renk v. City of Pittsburgh*, 537 Pa. 68, 76-77, 641 A.2d 289, 293-94 (1994).  At the pleading stage of this case, when Plaintiff alleges Botts was not attempting to make a lawful arrest, we need not consider this additional requirement.

Botts and supported the Officer by . . . telling Mr. Korth that he should stop making complaints since he was not a supervisor and that he should just leave." (*Id*.). Botts then continued his "attack" on Plaintiff and "eventually began violently striking and pushing Mr. Korth about the upper body." (*Id*. ¶ 28). Botts repeatedly struck and pushed Mr. Korth so forcefully that Mr. Korth's full body was knocked backward repeatedly and painfully." (*Id*. ¶ 30). Plaintiff demanded that Hoover "do something to intervene and control" Botts. (*Id*. ¶ 31). Hoover "still did nothing; instead, she left the immediate area without making any comment to the officer to desist or to leave, etc." (*Id*. ¶ 32).

There is authority for the position that a person need not have committed the assault and battery herself; she can still be held liable if she was present for the assault and provided instruction and encouragement to the principal actor. *Gallagher v. Green*, No. 12-CV-3840, 2014 WL 4954833, at *10 (E.D. Pa. Oct. 2, 2014)(citing cases). Plaintiff does not allege that Hoover affirmatively encouraged Botts, but we think that if a supervisory official is present and observes a subordinate assaulting a person and does nothing except to indicate she believes the assaulted person is in the wrong, the supervisory official could be said to have encouraged the assault. *Accord Vicky M. v. Northeastern Educ. Intermediate Unit 19*, 486 F. Supp. 2d 437, 460-61 (M.D. Pa. 2007)(supervisory defendants committed acts of willful misconduct when they knew of subordinate's abusive acts but failed to take appropriate action).

We will grant the motion to dismiss Count 6 as to the Township and Baker but deny it as to Hoover.

H. *All Defendants Are Immune From the State-Law*
   *Claim for Negligence*

In the second Count 6, Plaintiff asserts a state-law claim against all defendants for negligence.[4]  Defendants move to dismiss this claim on the ground that they are immune under the Tort Claims Act.  In opposition, Plaintiff argues that under *Jones v. Chieffo*, 549 Pa. 46, 700 A.2d 417 (1997), the Township could be held liable for the negligence of an employee if it was jointly negligent.  Plaintiff does not address whether the individual defendants are immune.

Plaintiff's reliance on *Jones* is misplaced.  That case only addressed whether 42 Pa. Cons. Stat. Ann. § 8541, the general grant of governmental immunity, precluded municipal liability when the case involved the criminal or negligent acts of a third party, in *Jones* a driver fleeing from a Philadelphia police officer.[5]  The Pennsylvania Supreme Court ruled that section 8541 did not immunize the municipality from its own negligence when it is jointly liable with the third-party driver.  *Jones*, 549 Pa. at 50, 700 A.2d at 419. In doing so, it expressly stated that it "had not considered whether Jones' claims satisfy

---

[4]  The caption for the second Count 6 is "42 U.S.C. §1983 Negligence," leading Defendants naturally to understand that Plaintiff was bringing a claim for negligence under § 1983.  Defendants therefore moved to dismiss Count 6 on the ground that a negligence action cannot be brought under § 1983.  However, Plaintiff defends this claim as one under state law, so we will do likewise.

[5]  Section 8541 provides as follows:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

Case 1:15-cv-02422-WWC   Document 16   Filed 06/02/16   Page 26 of 30

the other requirements of the Political Subdivision Tort Claims Act." *Id.* at 52 n.6, 700 A.2d at 420 n.6.

Here, Defendants assert Plaintiff cannot satisfy the other requirements of the Tort Claims Act as section 8541 confers a general grant of immunity on the Township and Plaintiff's claim does not come within any of the eight exceptions from immunity for a negligence claim under 42 Pa. Cons. Stat. Ann. § 8542(a) and (b). *Jones* has no bearing on Defendants' position, and we agree with them that the Township is immune from the negligence claim. *Martin*, *supra*, 118 F. Supp. 3d at 779-80 (the defendant city was entitled to immunity on the plaintiff's tort claims when the claims did not come within any of the eight exceptions to immunity).

The individual defendants Hoover and Baker are also immune from the negligence claim. Employees have official immunity to the same extent as their employing municipality, 42 Pa. Cons. Stat. Ann. § 8545, unless, as noted, the conduct "constituted a crime, actual fraud, actual malice or willful misconduct . . . ." *Id.* § 8550. Negligence does not fall within this exception from official immunity. *M.S. v. Susquehanna Township School District*, 43 F. Supp. 3d 412, 433 (M.D. Pa. 2014).

We will dismiss the second Count 6 as against all three defendants.

I. *The Claim for Injunctive Relief Will Be Allowed to Proceed at This Time*

In Count 5, the state constitutional excessive-force claim and Count 6, the state-law claim for assault and battery, Plaintiff includes in his prayer for relief a request

-26-

for "injunctive relief."  In the final prayer for relief, he seeks an injunction against Defendants prohibiting them "from engaging in the future in the conduct identified in the Amended Complaint as violative of § 1983; and further affirmatively requiring the Township to engage in appropriate remedial efforts to adopt, and enforce, policies of the Township Police Department that are calculated and intended to preclude the conduct alleged to have been engaged in by the Defendants and Botts."  (Doc. 7, Am. Compl. ¶114(d)).[6]

Defendants move to dismiss any claim for injunctive relief, arguing that Plaintiff lacks standing to assert such a claim as he has failed to allege that he is in any immediate danger of sustaining a direct injury and that all that he has alleged is past exposure to illegal conduct.  And such exposure does not present a case or controversy for injunctive relief.  *See City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983).

In opposition, Plaintiff contends that he alleges the following in his Amended Complaint: that he "had been making complaints to the Township on numerous prior occasions that the hiring and supervision practices of the Supervisors created an ongoing risk to the community and himself"; that "he demanded that they conduct reasonable and customary background investigations"; and "that the Township Supervisors still repeatedly refused to do so despite having actual knowledge of allegedly serious and

_____

[6]  A generic claim for injunctive relief was also made in Count 4, the substantive due process claim, and the second Count 6, the state-law negligence claim, claims we decided should be dismissed.

repeated misconduct by one or more officers, including the officer involved in the attack."

(Doc. 14, ECF p. 28).  Plaintiff adds that the failure of the Township to adopt basic

cautionary customs and policies still presents a real and immediate threat to him as he is

still a Township resident and subject to its police department's authority.  He also claims

the "injunctive relief sought by the Plaintiff in this case would simply be to direct the

Township to conduct reasonable background checks on officers it desires to hire."  (*Id.*).

We have already decided that Plaintiff's allegations concerning the policies and

customs of the Township and its supervisors are not sufficiently factual to allow the

claims against them on these grounds to proceed.  However, since we are going to allow

amendment of the complaint, we decline to dismiss the claim for injunctive relief at this

stage of the proceedings, as amendment might answer Defendants' objection.  Since

Plaintiff will be amending his pleading, we are especially interested in allegations

concerning similar misconduct by other officers, not just Botts.

Defendants' motion to dismiss Plaintiff's request for injunctive relief will be

denied.


J. *The Punitive Damages Claim in the Federal Causes*
   *of Action Will Not Be Dismissed as Against the Individual*
   *Defendants But Will Be Dismissed as Against the Township*

In all counts of the Amended Complaint, Plaintiff seeks punitive damages.  In

the final prayer for relief, he seeks punitive damages against Defendants "in their

individual capacity, jointly and severally, in an amount in excess of $150,000.00." (Doc. 7, Am. Compl. ¶ 114).

Defendants make two arguments against allowing a claim for punitive damages, arguments which relate only to Plaintiff's federal causes of action.  First, punitive damages are not permitted against a municipality in a civil-rights action.  See *Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011).  Plaintiff concedes that he cannot collect punitive damages against the Township.  We will therefore dismiss any punitive damages claim against Oliver Township.

Second, Defendants argue that Plaintiff has failed to allege facts that would allow the award of punitive damages against the individual defendants.  Punitive damages are permitted against individual defendants in a federal civil-rights action when the defendant's conduct is "at a minimum, reckless or callous.'"  *Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006)(quoting *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989)).  "'Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard.'" (*Id.*)(quoting *Savarese*, 883 F.2d at 1204).

We are going to allow amendment of the complaint.  We therefore decline to

dismiss the claim for punitive damages against the defendant supervisors at this time, as amendment might cure any defect in the claim for punitive damages.

We will issue an appropriate order.


/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date:  June 2, 2016