IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GARY L. KORTH,
    Plaintiff

vs. : CIVIL NO. 1:CV-15-2422

JILL HOOVER, individually and in her official capacity; JOSEPH R. BAKER, individually and in his official capacity; and OLIVER TOWNSHIP,
    Defendants

(Judge Caldwell)

*M E M O R A N D U M*

I. *Introduction*

    Plaintiff, Gary L. Korth, filed this civil-rights action under 42 U.S.C. § 1983 accompanied by state-law claims. The suit arises from an alleged assault on Plaintiff committed by a police officer, Mark Botts, now deceased, employed by Oliver Township. Korth named as defendants the Township and two of its supervisors, Jill Hoover and Joseph Baker. At the time of the alleged assault, Plaintiff was visiting the Township Municipal Building and making a complaint to Hoover about Botts.

    After a series of procedural rulings, Hoover is the only defendant left in the case and on only two claims, a Fourth Amendment claim for use of excessive force and a state-law claim for assault and battery. We are considering her motion for summary judgment.

II.  *Procedural History*

Plaintiff filed this action in state court, and it was removed here by Defendants. In response to a motion to dismiss the original complaint, Plaintiff filed an amended complaint. In the amended complaint, Plaintiff presented seven causes of action: (1) a Fourth Amendment excessive-force claim against Hoover and Baker; (2) a federal civil-rights supervisory-liability claim against Hoover and Baker for the injuries Botts inflicted by way of the deficient policies and practices they implemented; (3) a federal civil-rights municipal-liability claim against the Township for the injuries Botts inflicted based on deficient policies, practices, and customs; (4) a federal substantive due process claim against all three defendants for Botts' conduct; (5) a claim against all three defendants under the Pennsylvania Constitution, Art. I, § 8, the state counterpart to the Fourth Amendment; (6) a state-law claim against all the defendants for assault and battery; and (7) a state-law claim against all defendants for negligence.

Defendants filed a motion to dismiss the amended complaint. In a memorandum detailing the pertinent allegations of the amended complaint, we ruled as follows, in relevant part. The Fourth Amendment excessive-force claim could proceed against Hoover but not against Baker, based on Hoover's direct personal involvement with the assault. The federal civil-rights supervisory-liability claim against Hoover and Baker was dismissed because Plaintiff failed to allege sufficient facts showing they had implemented deficient policies or customs that caused Plaintiff's injuries. The federal civil-rights municipal-liability claim against the Township was dismissed because Plaintiff

failed to allege sufficient facts showing it had implemented deficient policies, practices, and customs that caused Plaintiff's injuries. The federal substantive due process claim was dismissed because Plaintiff's civil-rights claim was covered by the Fourth Amendment, not the Fourteenth Amendment. The Pennsylvania constitutional claim was allowed to proceed for injunctive relief but not for damages. The state-law claim for assault and battery was allowed to proceed against Hoover but not against the Township or Baker. The state-law claim for negligence was dismissed based on a state-law grant of immunity. *See Korth v. Hoover*, 190 F. Supp. 3d 394 (M.D. Pa. 2016).

Plaintiff filed a second amended complaint. In that pleading, Plaintiff set forth five causes of action. In Count 1, he made a Fourth Amendment claim against Hoover and Oliver Township for Botts' use of excessive force. In Count 2, he made a supervisory-liability claim against Hoover and Baker. In Count 3, he made a municipal-liability claim against Oliver Township. In Count 4, a repeat of the amended complaint's Count 5, he made a claim under the Pennsylvania Constitution, Art. I, § 8, against all three defendants for unspecified injunctive relief. In Count 5, he made a claim for assault and battery against Hoover.

Defendants filed a motion to dismiss, which sought dismissal of Count 1 as against the Township, and dismissal of Counts 2 and 3. They argued that Plaintiff had once again failed to adequately allege supervisory or municipal liability based on policy or custom. They did not move to dismiss Counts 4 or 5. We granted the motion. *Korth v. Hoover*, 2016 WL 5719834, at *3 (M.D. Pa. Oct. 3, 2016).

-3-

As a result, the remaining claims were: (1) Count 1 against Hoover for her direct personal involvement in the excessive force used by Botts; (2) Count 4, a claim under the Pennsylvania Constitution, Art. I, § 8, against all three defendants for unspecified injunctive relief; and (3) Count 5, a state-law claim for assault and battery against Hoover.

Defendants filed an answer to the second amended complaint on October 24, 2016. Thereafter, they filed a "motion for a protective order and/or order clarifying remaining claims." The motion requested that we "strik[e] any remaining claims for injunctive relief" and that we dismiss Oliver Township and Joseph Baker from the action. The request to strike the claims for injunctive relief was essentially directed at Count 4 of the second amended complaint, the count seeking unspecified injunctive relief against the three defendants under the Pennsylvania Constitution, Art. I, § 8, the state counterpart to the Fourth Amendment. We treated the motion as one for judgment on the pleadings and granted it. *Korth v. Hoover*, 2017 WL 2653151 (M.D. Pa. Jun. 20, 2017).

There is thus left for resolution only two claims and against only one defendant -- Hoover. The claims are a federal claim for use of excessive force under the Fourth Amendment and a state-law claim for assault and battery. As noted, Hoover has moved for summary judgment on the claims.

III. *Standard of Review*

Fed. R. Civ. P. 56 governs the grant of summary judgment. The moving party is entitled to summary judgment if she "shows that there is no genuine dispute as to

-4-

any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017)(citation omitted).

In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The non-moving party cannot rest on mere pleadings or allegations," *El v. Southeastern Pennsylvania Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). "To survive summary judgment, a party must present more than just 'bare assertions, conclusory allegations or suspicions . . . .'" *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)(cited case omitted). "'[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" *Blair, Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)(cited case omitted).

We "must view all evidence and draw all inferences in the light most favorable to the non-moving party" and we will only grant the motion "if no reasonable

-5-

juror could find for the non-movant." *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

IV. *Background*

The following is the record for the purposes of defendant Hoover's motion for summary judgment, based on her statement of undisputed material facts, Plaintiff's counter-statement, and the evidence the parties have submitted in support. We will sometimes borrow the parties' language without attribution. When we cite to only one party's statement, or counter-statement, of material fact, we do so because the other party has admitted the relevant statement.

Plaintiff, Gary L. Korth, is an adult individual who, at all relevant times, resided in Newport, Oliver Township, Perry County, Pennsylvania. (Doc. 50, Defendant's statement of undisputed material facts (DSMF) ¶ 1). Oliver Township is a second class township under Pennsylvania law. (*Id.* ¶ 2).

The Oliver Township Municipal Building consists of a public meeting area, and offices and/or work spaces for the Township secretary/treasurer and sewer authority secretary. (*Id.* ¶ 4). The Municipal Building also houses the office for the police department. (*Id.* ¶ 5). On July 18, 2013, the date of the alleged assault, the police department consisted of a single, part-time police officer, Sergeant Mark R. Botts. (*Id.* ¶ 6).

Defendant Hoover is employed by Oliver Township as its secretary/treasurer. (*Id.* ¶ 8). This is an hourly job she has held since 2000. (*Id*).

Hoover is also a Township supervisor, first elected in 2012. (*Id.* ¶ 10). As a supervisor, she is paid a monthly stipend of $125, if she attends the monthly supervisors' meeting. (Doc. 48-3, ECF p. 6, Hoover Dep.). In her view, she does not do supervisor-type work unless they are at their regular monthly meeting. (*Id.*, ECF p. 10). If approached by a resident, she will, however, act like a supervisor, listen to the resident's concern, but handle it at a meeting. (Id. at ECF p. 10-11). The Board would be able to discuss allegations of police misconduct, (*id.*, ECF p. 18), although she has never received an allegation of police misconduct until Plaintiff made one about Botts. (*Id.*).

At all times relevant hereto, the Oliver Township Board of Supervisors consisted of Hoover, Baker, and Ralph Lesh, III. (Doc. 50, DSMF ¶ 9). The Board of Supervisors supervised Botts at the time of the alleged assault. (Doc. 48-3, ECF pp. 68, 75, Hoover Dep.). The Board was also in charge of disciplining Botts. (*Id.*, ECF p. 71).

Before the alleged assault, Plaintiff expressed concern about how the Township was paying bills. He did not think the Township was conducting business the way everyone else did. (Doc. 48-2, ECF pp. 43-44, Korth Dep.). He also made complaints about Botts' alleged misconduct to the Township supervisors. (Doc. 50, (DSMF ¶ 12). None of the complaints against Botts concerned the use of excessive force. (*Id.* ¶ 13).

Plaintiff gives the following account of the altercation that is the basis of this action. On July 18, 2013, he went to the Municipal Building to examine some of the Township's bills and invoices. (Doc. 48-2, ECF p. 45, Korth Dep.). Hoover was working

-7-

that day.[1]  He entered Hoover's office and asked her if she thought evidence he had previously presented against Botts warranted an investigation of Botts.  She replied that Plaintiff was "not the fourth supervisor."  (Doc. 48-2, ECF p. 47, Korth Dep.).  He also asked if she thought Botts should be suspended pending further investigation.  (*Id.,* ECF p. 51).

Then Botts came in and got right in Plaintiff's "face," saying that Plaintiff was "in my space."  (*Id.,* ECF p. 52).  Plaintiff replied that Botts was "in my space."  (*Id.*).  Botts and Plaintiff were standing close together.  (*Id.,* ECF p. 53).  Hoover then stood beside them and told Plaintiff he "need[ed] to leave."  (*Id.*).  Plaintiff told Hoover that Botts needed to go to his office and that Plaintiff was conducting business for the Township.  (*Id.*).  He told Botts as well that he was conducting business and that Botts had to go back to his office.  (*Id.*, ECF p. 54).

There was no further discussion between Plaintiff and Hoover, (*id.*, ECF p. 53), although she did say she was calling the state police.  (*Id.*, ECF p. 54).[2]  "She turned her back and went to the phone.  And from that point to the end her back was turned."  (*Id.*).

Botts told him to "get out," and before Plaintiff could respond, Botts "was hitting him very hard in the chest area forcing [him] out the door" to the hallway, about

---

[1] According to Hoover, she was working in her capacity as the township's secretary/treasurer.  (Doc. 48-3, ECF pp. 9-10, Hoover Dep.).

[2] According to Hoover, Botts asked her to call the state police.  (Doc. 48-2, ECF p. 45, Hoover Dep.).

-8-

fifteen feet away. (*Id.,* ECF pp. 54-55). Botts was "pushing" him and after the first push, Plaintiff yelled at Hoover "your officer is assaulting me," and he kept saying that, and Botts kept assaulting him. (*Id.,* ECF p. 55). Plaintiff asked her for help at least three times. (*Id.,* ECF p. 58)

Plaintiff knows he was kneed one time in the groin area and was also shoved. As a result of Botts' actions, Plaintiff also hit the wall in the hallway. He did not fall to the floor but was caught by the wall. When he stood up, he was hit again, the door opened, and he fell out. (*Id.*, ECF p. 55). There were "numerous" contacts between Plaintiff and Botts before Plaintiff got to the door. (*Id.*, ECF p. 59). Plaintiff does not know if Botts used his hands. Botts "was using anything and everything" to hit Plaintiff. (*Id.*, ECF p. 60).

As soon as Hoover had turned her back, Botts hit Plaintiff "with all his force." (*Id.*, ECF p. 56). "She did nothing to stop him. She said nothing." (*Id.*). During the assault, there was no communication between Hoover and Botts. (*Id.*, ECF p. 70). Plaintiff thinks he was hit the first time with a shoulder; "it got [him] right in the center." (*Id.*, ECF p. 56). Then Plaintiff went backwards. He did not fall but it was like a continuous assault. (*Id.*, ECF p. 57). Plaintiff thinks he was hit numerous times before Hoover even got to the phone. "And she never once when [he] yelled for help looked back. She ignored [him] a hundred percent." (*Id.*).

Hoover did call the state police. (*Id.*, ECF p. 58). At that point, Plaintiff was out in the hallway, and he told her to tell them not to send a car, that he was on his

-9-

way.  (*Id.*, ECF pp. 58-59).  Plaintiff has no idea how long the incident took, but it happened "quickly."  (Id., ECF pp. 69-70).[3]

After leaving the building, Plaintiff drove himself to the Pennsylvania State Police.  (Doc. 50, DSMF ¶ 31).  State Police Trooper Ryan French investigated the incident.  As part of his investigation, he interviewed all witnesses.  (*Id.* ¶ 32).  During his interview with Korth, Trooper French does not recall Plaintiff saying he was injured or needed medical attention.  He did not appear injured to the Trooper.  The Trooper does not recall that he complained about any pain.  (Doc. 48-4, ECF p. 8, French Dep.).  Plaintiff seemed more concerned about Botts and dealings within the Township.  (*Id.*).  Plaintiff testified that he told the Trooper he was not feeling good and was having chest pains.  (Doc. 48-2, ECF p. 91, Korth Dep.).

After his interview with the Trooper, Plaintiff left the State Police barracks so he could drive his wife to where she could get a ride to work.  (Doc. 50, DSMF ¶ 36).  Later that night, Plaintiff drove himself to the Holy Sprit Hospital Emergency Department.  (*Id.* ¶ 37).  Plaintiff presented with chest pains.  (*Id.* ¶ 39).  After not being able to wait anymore, Plaintiff left the Emergency department without being seen.  (*Id.* ¶ 40).  The next day Plaintiff called the Holy Spirit Patient Advocate and complained about how he was a

---

[3]  Hoover has a different version of events.  She had asked Plaintiff to leave after he said she and Botts should watch their backs.  (Doc. 48-3, ECF pp. 43-44, 45, Hoover Dep.).  Botts also asked him to leave.  He refused.  (*Id.*, ECF p. 45).  Botts asked her to call the state police.  (*Id.*).  Then the altercation began.  She watched it.  (*Id.*, ECF pp. 44-45).  Plaintiff was not struck in the chest and groin area.  (*Id.*, ECF p. 29).  Neither Plaintiff nor Botts put their hands on each other.  (*Id.*).  "They used their bodies.  They bumped bellies."  (*Id.*).  They made no contact with their feet.  (*Id.*, ECF p. 47).

-10-

"heart patient" and had been made to wait the night before. The Patient Advocate purportedly advised Plaintiff to call an ambulance to bring him to the hospital. (*Id.* ¶ 41).

Plaintiff returned to Holy Spirit Hospital the following day; his complaint was chest pains. (*Id.* ¶ 42). The Emergency Department history and physical medical record from July 19, 2013, document complaints of chest pain with no other complaints. Of note, the records do not note any bruising. (*Id.* ¶ 43). A Consultation Report from July 19, 2013, . . . noted a two- to three-week history of chest discomfort. His symptoms became worse the day before when he has an emotional altercation with someone. He denied chest wall trauma. Physical examination did not reference bruising. (*Id.* ¶ 44). Plaintiff was in the hospital for monitoring for three days, or until July 21, 2013. (*Id.* ¶ 45). Plaintiff alleged he had quite a bit of bruising in the groin area after the altercation. (Doc. 48-2, ECF p. 100, Korth Dep.).

V. *Discussion*

> A. *The Fourth Amendment excessive force claim fails because Hoover was not Botts' supervisor and hence Plaintiff cannot establish Hoover's requisite personal involvement in the assault*

Asserting that Hoover was Botts' supervisor, Plaintiff makes a Fourth Amendment excessive force claim against Hoover for Botts' assault upon him. Personal involvement in the alleged wrongs is necessary for the imposition of liability in a civil rights action. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1988).  Liability cannot be imposed on the basis of respondeat superior.  *Evancho*, 423 F.3d at 353.  One way of showing personal involvement by a supervisory official is broken down by the Third Circuit as follows.  The supervisor can (1) participate in violating the plaintiff's rights; (2) direct others to violate them; or (3) as the person in charge, know of and acquiesce in the subordinate's unconstitutional conduct.  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, ___ U.S. ___, 135 S.Ct. 2042 (2015).[4]

"But where actual supervisory authority is lacking, mere inaction, in most circumstances, does not reasonably give rise to a similar inference [of acquiescence].  As a general matter, a person who fails to act to correct the conduct of someone over whom he or she has no supervisory authority cannot fairly be said to have "acquiesced" in the latter's conduct."  *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).  "[A]nd a higher-ranked individual does not necessarily have supervisory authority over a lower-ranked employee."  *Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 118 n.23 (3d Cir. 2017) (nonprecedential) (citing *Robinson*, 120 F.3d at 1294).  If supervisory authority is lacking, or "there is no state law duty to control the actions of the primary actor," *Jankowski v. Lellock*, 649 F. App'x 184,

---

[4] A second way of showing personal involvement of a supervisory official is to show, in part, that the official established and maintained a policy, practice or custom that directly caused the constitutional harm.  *Barkes*, 766 F.3d at 316.  In the instant case, Plaintiff has failed in two attempts to rely on this way of showing personal involvement.  *Korth*, 190 F. Supp. 3d at 405; *Korth*, 2016 WL 5719834, at *3.

187 (3d Cir. 2016)(nonprecedential), there is no need to go any further and determine if the defendant's conduct meets either of the two ways a supervisor can be personally involved in a civil-rights violation. *Id.*

Here, Defendant argues she was not a supervisor of Botts for two reasons. First, at the time of the altercation, she was working as the Township's secretary/treasurer, an hourly employee who had no supervisory role over the Township's police department or officers. Second, under Pennsylvania law, power over a second class township police department is vested in its Board of Supervisors. *See* 53 Pa. Stat. Ann. § 66901 ("The board of supervisors may by resolution create or disband a police force within the township or, upon the petition of not less than twenty-five registered electors or taxpayers of the township, appoint police officers."). Defendant argues that when authority is vested in the board of supervisors, "a single township supervisor may not unilaterally take action." (Doc. 49, Def.'s Br. in Supp. at ECF p. 22). In support, she cites *Heller v. Fulare*, 454 F.3d 174, 178 (3d Cir. 2006), and its citation to 53 Pa. Stat. Ann. § 66902. Section 66902 provides, in part, that the board of supervisors of a second class township "shall provide for the organization and supervision and determine the number and the compensation of the police officers."

In her reply brief, she also cites cases where the courts have determined that an individual board member cannot be held liable when authority was vested in the board as a whole. *See Dewees v. Haste*, 620 F. Supp. 2d 625, 641-42 (M.D. Pa. 2009)(individual member of a county salary board could not be found liable for the

-13-

plaintiff's discharge when authority to fire was in the board alone); *Bangor Area Educ. Ass'n v. Angle*, 720 A.2d 198, 201 (Pa. Commw. Ct. 1998)(individual school board member lacked authority to examine teachers' personnel files when such authority was vested solely in the school board); *Kuzel v. Krause*, 658 A.2d 856, 860-61 (Pa. Commw. Ct. 1995)("Commissioner Krause alone cannot be held liable for the act of the Township Board of Commissioners in terminating Employees for any reason. An individual Township Commissioner alone has no authority; he or she is just one member of the Board of Commissioners and has no power alone to take any action unless a majority of the Board of Commissioners, acting as a body, does so.").

      We agree with Defendant that she cannot be liable on the excessive force claim because she was not Botts' supervisor at the time of the altercation. There is nothing in the record establishing that individual supervisors were given supervisory authority over Botts; there is only the statutory authority conferred on the board of supervisors to "provide for the organization and supervision . . . of . . . police officers." Without supervisory authority, Hoover cannot be liable for Botts' actions. *See Dewees*, *supra*; *Kuzel*, *supra*.

      In opposition, Plaintiff first argues that Hoover was Botts' supervisor because she is a member of the Board of Supervisors, which supervised Botts and had authority to discipline him. We disagree. As noted above, being a member of the board is not enough to establish supervisory status.

-14-

Plaintiff next argues that there is evidence that Hoover either participated directly in violating Plaintiff's rights or knew of and acquiesced in Botts' violations of his constitutional rights. We see no evidence of direct participation. According to Plaintiff's own testimony, Hoover did not get involved in the altercation in any way -- which happened quickly. She did not order Botts to stop, but she had no supervisory authority over him.

As for evidence dealing with knowledge and acquiescence, Plaintiff relies on Hoover's knowledge of other complaints made against Botts. There were complaints in another county that he had been handing out business cards for a men's club. Neither Hoover nor the Board investigated these "rumors." Hoover said she did not because she received no formal complaint. (Doc. 48-3, ECF pp. 20-21, Hoover Dep.). There was also complaints Plaintiff made about two days before the altercation when Plaintiff told Hoover that Botts was being investigated by the district attorney and requested that Botts be fired. (*Id.*, ECF p. 24). Hoover did nothing except to advise Plaintiff to talk to the district attorney or the Pennsylvania State Police. (*Id.*, ECF p. 25).

Plaintiff argues that knowledge of these complaints and Hoover's failure to do anything about them establishes her personal involvement in Botts' conduct. But we fail to see the connection. Plaintiff's argument, although couched as one dealing with personal involvement, appears to be an attempt to resurrect a claim that Hoover is liable because she established and maintained a policy, practice or custom that directly caused the constitutional harm. We reject this claim in part for the same reason we did so in

connection with Defendants' two motions to dismiss; none of them deal with claims of excessive force. *See Korth v. Hoover*, 2016 WL 5719834, at *3 ("None of these allegations deal with excessive force . . . We advised Plaintiff when granting him leave to amend that the previous conduct had to be similar to the conduct that caused his injuries.").

We therefore conclude that Hoover is entitled to summary judgment on the excessive force claim.[5]

### B. *Hoover did not commit assault and battery*

"In Pennsylvania, '[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.'" *Sanford v. O'Rourke*, No.06-CV-739, 2008 WL 2550882, at *16 (M.D. Pa. Jun. 23, 2008)(quoting *Rank v. City of Pittsburgh,* 641 A.2d 289, 293 (Pa. 1994)).

We permitted the assault and battery claim to proceed on the theory "that a person need not have committed the assault and battery herself; she can still be held liable if she was present for the assault and provided instruction and encouragement to

---

[5] Hoover also argues she is entitled to qualified immunity. However, since the excessive force claim against her is meritless, we see no need to decide the qualified immunity issue.

the principal actor." In support, we cited *Gallagher v. Green*, No. 12–CV–3840, 2014 WL 4954833, at *10 (E.D. Pa. Oct. 2, 2014). *See Korth v. Hoover*, 190 F. Supp. 3d at 409.[6]

Hoover moves for summary judgment on this claim by pointing out there is no evidence that she instructed or encouraged Botts to commit the assault and battery. We agree. Plaintiff's own testimony is that Hoover went to the phone to call the state police and kept her back turned throughout the entire incident.

In opposition, Plaintiff asserts that Hoover's presence at the scene, her status as a board member making her Botts' superior, and her failure to stop Botts along with her willingness to follow his orders encouraged him in the assault and battery.

We disagree. First, Hoover, as an individual, was not Botts' superior. Second, the evidence cannot be interpreted in the way Plaintiff does. We believe the record shows that Hoover did not instruct or encourage Botts in his actions. Hoover is

---

[6] We also noted that Plaintiff did not allege that Hoover affirmatively encouraged Botts but we thought that such affirmative conduct was not necessary for a supervisory official who was present while a subordinate assaulted someone. *Id.* However, we now know that Hoover was not Botts' supervisor.

therefore entitled to summary judgment on the claim of assault and battery.[7]

We will issue an appropriate order.[8]

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: October 16, 2017

---

[7] Based on this ruling, we need not consider Hoover's arguments that she is immune under the Pennsylvania Tort Claims Act, 42 Pa. Cons. Stat. Ann. §§ 8541, 8545, or that she has high official immunity under the common law.

[8] Hoover has also moved for summary judgment on the claim for punitive damages but because punitive damages were requested as part of the two claims on which she has prevailed, we see no need for a separate ruling denying a claim for punitive damages.

-18-